UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L. TUCKER,                                           Case No. 09-13246

           Plaintiff,                              Nancy G. Edmunds
v.                                                   United States District Judge

T. PENTRICH, *et al.*,                               Michael Hluchaniuk
                                                     United States Magistrate Judge

           Defendants.
_____/

**REPORT AND RECOMMENDATION
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. 30) AND PLAINTIFF'S COUNTER-MOTION
FOR SUMMARY JUDGMENT (Dkt. 47)**

## I.   PROCEDURAL HISTORY

Plaintiff filed his prisoner civil rights complaint on August 18, 2009.  (Dkt.

1).  Plaintiff's complaint was initially dismissed under the "three strikes" rule.

(Dkt. 6).  After a trip to the Sixth Circuit Court of Appeals, the dismissal was

reversed and this matter was reopened in June, 2012.  (Dkt. 11, 12).  On August 31,

2012, this matter was referred to the undersigned for all pretrial proceedings. (Dkt.

20).

Defendants filed a motion for summary judgment on December 21, 2012.

(Dkt. 30).  In January, 2013, plaintiff asked for an extension of time to respond

(Dkt. 32), which was granted until April 8, 2013.  (Dkt. 35).  In response to

defendant Holland's motion to stay discovery, plaintiff suggested that he could not respond to the motion for summary judgment without obtaining some discovery from defendant Holland.  In resolving that motion to stay discovery, the undersigned allowed plaintiff to conduct discovery that was related to defendant Holland's motion for summary judgment (which is based solely on the issue of exhaustion) and stayed discovery that was deemed unrelated to her motion.  (Dkt. 44).  In that order, dated May 29, 2013, the Court also set a final deadline for plaintiff to respond to the motion for summary judgment of July 8, 2013, indicating that no further extensions would be granted and warning that the undersigned would recommend dismissal if a response was not timely filed.  *Id.*  Instead of filing a response by July 8, 2013, plaintiff filed his own motion for summary judgment on July 2, 2013, or in the alternative, for leave to conduct discovery, comprising 268 pages, including the brief, affidavit, and a multitude of other supporting exhibits.  (Dkt. 47).  The Court construed this as both a response to defendants' pending motion for summary judgment and as a separate motion under Federal Rule of Civil Procedure 56(d).  (Dkt. 49).  The Court denied the Rule 56(d) motion and ordered defendants to file a reply to plaintiff's response.  (Dkt. 49).  Defendants did so and also filed a response to plaintiff's counter-motion for summary judgment.  (Dkt. 51, 53).

        These matters are now ready for report and recommendation.  For the

reasons set forth below, the undersigned concludes that certain issues of material fact remain and thus **RECOMMENDS** defendant's motion for summary judgment should be **GRANTED** in part and **DENIED** in part.  Because those issues of fact remain, as set forth below, plaintiff's motion for summary judgment should be **DENIED**.

## II.    FACTUAL BACKGROUND

Plaintiff's complaint is brought pursuant to 42 U.S.C. § 1983 and he claims infringement of his civil rights, alleging violations of the First and Eighth Amendments of the United States Constitution.  During the time period relevant in the complaint, plaintiff was incarcerated at the St. Louis Correctional Facility (SLF), Ionia, Michigan.  Plaintiff alleges that on June 17, 2009, Corrections Officers (C/Os) Todd Pentrich and Kirk Kerkau made disparaging comments while escorting him from a dental appointment.  Once inside the housing unit, plaintiff alleges that these officers kicked his feet out from underneath him and took him to the floor.  Plaintiff claims that while on the floor, Officer Pentrich intentionally placed his thumb in plaintiff's left eye and then started to choke him by applying pressure to his neck and jaw and pressing his finger on plaintiff's Adam's apple. (Dkt. 1, ¶ 18).  Plaintiff next alleges that after he was returned to his cell, Sergeant Shaw and Officers Pentrich and Kerkau pulled on his belly chains "with great force in an attempt to cause plaintiff Tucker injury and pain." (Dkt. 1, ¶ 28).  Plaintiff

also alleges that the misconduct violations issued by Sergeant Shaw and Officer Pentrich were false and retaliatory in nature.  Finally, Tucker alleges that Hearings Investigator Brenda Holland failed to conduct an adequate investigation so that he could defend the misconduct charges levied against him.

In Count I of the Complaint, plaintiff alleges excessive force and assault and battery by defendants Pentrich and Kerkau.  (Dkt. 1, Pg ID 3).  In Count II of the Complaint, plaintiff alleges First amendment retaliation.  Specifically, plaintiff claims that because of his role as a prisoner rights activist and jailhouse lawyer, defendants Pentrich and Kerkau retaliated against him based on the use of excessive force described in Count I.  Plaintiff also alleges that they retaliated by issuing the false misconduct report, issuing the false critical incident reports, and by causing him permanent injury.  He claims that the issuing of the reports was pretextual, in order to cover up their retaliatory motive.  In Count III, plaintiff alleges that defendant Shaw kicked him and stood on his leg while he was on the floor, during the same incident with defendants Pentrich and Kerkau.  In Count IV, plaintiff alleges retaliation by defendant Shaw after plaintiff told him he would file a grievance regarding the excessive force/assault and battery claims.  Specifically, plaintiff claims that Shaw issued a false misconduct report, and participated in the second assault and battery when he was returned to his cell.  In Count V, plaintiff alleges retaliation by defendant Holland.  According to plaintiff, Holland told him

4

that she would not find witnesses for his misconduct hearing and as far as she was concerned, he was guilty.  He also says that she failed to produce the video at the misconduct hearing based on plaintiff's having previously filed a grievance against her.

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving

party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

  B.   Eighth Amendment/Excessive Force/Assault and Battery

    1.   Legal Standards

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton

infliction of pain." *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton

infliction of pain are those that are "totally without penological justification."  *Id*.

However, every malevolent touch by a prison guard does not give rise to an Eighth

Amendment cause of action.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

       2.    The parties' factual contentions

The excessive force claims present a classic factual dispute where summary

judgment is not appropriate.  Defendants contend that the facts are as follows:

According to C/O Pentrich, on June 17, 2009, he, along with C/O Kerkau, escorted

Tucker back to his cell from a dental callout.  (Dkt. 30-2, Defendants' Exhibit A,

Affidavit of Todd Pentrich at ¶ 4).  During the escort, defendants contend that

Tucker stated to C/O Pentrich, "Bitch, I should spit in your face."  C/O Pentrich

responded by stating to Tucker that he was not going to spit on anyone.  (Dkt. 30-

2, Pentrich Aff. Ex. A at ¶ 5).  Each time Tucker attempted to turn toward C/O

Pentrich, Tucker was instructed to turn around.  (Dkt. 30-2, Pentrich Aff. Ex. A at

¶ 6).  Once they entered Housing Unit 7 and were on A-wing Base, Tucker pulled

away from Officers Pentrich and Kerkau and turned towards C/O Pentrich in an

attempt to spit.  (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 7).  In an effort to gain control

over the situation, Officers Pentrich and Kerkau took Tucker down to the floor and

were able to maintain control over Tucker until additional staff arrived. While on

the floor, Tucker stated, "take me out of these restraints and I'll whip your ass."

(Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 8).  Once on the floor, C/Os Pentrich and

Kerkau were able to maintain control over Tucker until additional staff arrived.

Sergeant Shaw and Officers Umbarger and Darmody provided additional

support and assistance.  (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 9).  Officer Umbarger

provided a spitter's mask which Officer Pentrich placed on Tucker's head.  (Dkt.

30-2, Pentrich Aff. Ex. A at ¶ 10).  Officer Darmody then assisted Officer Pentrich

in escorting Tucker the remainder of the way back to his cell.  (Dkt. 30-2, Pentrich

Aff. Ex. A at ¶ 11).  At his cell, Sergeant Shaw and Officer Pentrich held on to

Tucker's arms while Officer Kerkau began to remove the belly chains through the

food slot.  Tucker then yanked his arms free which resulted in Sergeant Shaw's

hands being forcefully pulled inside the food slot.  (Dkt. 30-2, Pentrich Aff. Ex. A

at ¶ 12).  Sergeant Shaw was able to pull the restraints back through the food slot

and the restraints were removed.  (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 13).  After

the restraints were removed, and despite repeated orders from Sergeant Shaw,

Tucker refused to take his arm out of the open food slot so that the slot could be

closed.  (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 14).  In their affidavits, both Officer

Kerkau (Dkt. 30-3, Defendants' Exhibit B) and Sergeant Shaw (Dkt. 30-4,

Defendants' Exhibit C) attest to a similar factual scenario.

C/Os Pentrich and Kerkau and Sergeant Shaw assert that they physically

restrained Tucker in order to counter Tucker's aggressive actions towards them.  At

Report and Recommendation
Cross-Motions for Summary Judgment
*Tucker v. Pentrich*; Case No 09-13246

no time did corrections staff maliciously or sadistically inflict pain towards Tucker. The force that was applied, as previously described, was only that amount necessary to insure staff safety and bring control to a rapidly escalating disturbance. (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 20; Dkt. 30-3 Kerkau Aff. Ex. B at ¶ 17; Dkt. 30-4, Shaw Aff. Ex. C at ¶ 16).

Additionally, at paragraph 10 of his Complaint, Tucker alleges that during the escort, property room staff referred to him as "that grievance writing Tucker" and that Officer Pentrich stated "He look like one of them kind, we will take care of his black ass." Both C/Os Pentrich and Kerkau assert that these allegations are false and that their conduct and language remained professional towards Tucker at all times, regardless of the situation. (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 15; Dkt. 30-3, Kerkau Aff. Ex. B at ¶ 15).

Once Tucker was returned to his cell, he was examined by Nurse Branch. According to her Critical Incident Participant Report, when Nurse Branch approached his cell, Tucker was continuing to hold his food slot hostage by hanging his arm out the slot. Although Tucker complained that his left eye, left side of head and wrists hurt, Nurse Branch neither felt nor observed any abnormalities. In addition, Tucker denied any loss of consciousness, walked with a steady gait and was responsive to all of Nurse Branch's questions. (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 5, Attachment #1, Critical Incident Report SLF-062-2009).

Because Nurse Branch believed that Tucker was still acting in a threatening behavior, Nurse Branch decided to wait until Tucker was more cooperative before taking his vital signs.  C/Os Pentrich and Kerkau and Sergeant Shaw assert that Tucker suffered no more than a *de minimis* injury.

In contrast, plaintiff provides the following statement of facts, supported by his own affidavit.  (Dkt. 47, plaintiff's affidavit).  During his call-out from administrative segregation for his dental appointment, he was escorted by defendants Pentrich and Kerkau.  Plaintiff says when they reached the back of the unit, he was ordered to get on his knees so that he could be placed in leg restraints. After he was placed in leg restraints, plaintiff says he was escorted to dental without incident.  They left the dental appointment and as they were going through the property room, defendants' co-worker said "Oh I see you got that grievance writing Tucker, with you, he is filing a grievance on me."  Then Pentrich stated that Tucker looked like of those kind and they will take care of his "black ass." Plaintiff next says that as soon as they walked out of the property room, Pentrich and Kerkau began playing the "race game" and taunting him.  Tucker says he told them he would grieve them for their comments.  According to plaintiff, Kerkau then began pushing him and said "we will kick your black ass."  As they reached the door to another part of the unit, Tucker says Pentrich falsely stated the he was going to spit on someone.  Plaintiff denies making any such statement.

When they got within a few feet of the doorway, Pentrich forcefully grabbed plaintiff on the right side of the neck and pushed the left side of his head on to the door frame opening while kicking his feet out from under him.  While laying on the floor in restraints, without resisting, Pentrich pushed his finger into plaintiff's Adam's apple, pushed his thumb into plaintiff's left eye with great force, and choked him, all while stating "I told you that I beat your black ass."  Defendant Shaw arrived at the scene of the incident and kicked plaintiff in the leg and stood on his leg, all while plaintiff was not resisting.

When Officer Darmody arrived at the scene, plaintiff says he was forcefully picked up from the floor and escorted back to his cell.  When Kerkau took the lock off the back of the belly chains, before plaintiff could turn around, all three of them forcefully pulled both of plaintiff's hands and arms out of the food slot just to cause him pain and harm.  (Dkt. 47, plaintiff's affidavit).

3.      Analysis and conclusion.

Defendants assert that even when the issue of *de minimis* injuries[1] is not used as the basis for the decision, plaintiff has still failed to establish with sufficient evidence that he was subjected to excessive force in violation of the

---

[1]  As defendants acknowledge, there is a conceptual distinction between a *de minimis* injury and a *de minimis* use of force.  *See Wilkins v. Gaddy*, *infra* ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."); *Brown v. Lippard*, 472 F.3d 384, 386 n. 1 (5th Cir. 2006) ("The Supreme Court in *Hudson* was concerned with a *de minimis* use of force showing, not a *de minimis* injury.").

2:09-cv-13246-NGE-SDD   Doc # 55   Filed 08/19/13   Pg 12 of 24   Pg ID 887

Eighth Amendment.  Defendants also state that while it is possible that a prisoner

could receive only *de minimis* injuries and still establish an Eighth Amendment

claim if the force was inflicted maliciously and sadistically to cause harm, the

absence of significant injury can be considered.  Defendants rely on *Richmond v.*

*Settles*, 450 Fed.Appx. 448 (6th Cir. 2011) in which a prisoner alleged that

corrections staff used excessive force.  In affirming the district court's

determination that the plaintiff had suffered only a *de minimis* injury insufficient to

state a viable claim, the Sixth Circuit relied on the injury report which noted "small

superficial abrasions on his elbow and shoulder but exhibited no redness, swelling,

heat or abrasion on his allegedly injured knee." *Id*.  In the case at hand, Nurse

Branch's examination noted no injuries.  Furthermore, according to defendants,

Tucker's refusal to cooperate with the examination and his insistence at keeping

his food slot hostage by maintaining his arm outside the slot suggests that, at best,

he suffered only a *de minimis* injury.  In summary, defendants assert that Tucker

exhibited signs of verbal and physical aggression towards staff and only that

amount of force which was necessary to protect all involved in the incident was

applied.  Thus, defendants maintain that Tucker's allegations fail to state a claim of

excessive force and C/Os Pentrich and Kerkau and Sergeant Shaw are entitled to

summary judgment.

      Defendants' reliance on *Richmond* is misplaced, as the Sixth Circuit, in this

unpublished decision, did not address the Supreme Court's holding in *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). In *Wilkins*, the Court re-affirmed the notion that significant injury is not a threshold requirement for an excessive force claim. Instead, the "'core judicial inquiry' [is not] the extent of the injury," but "whether [the force used] was nontrivial and "was applied ... maliciously and sadistically to cause harm.'" *Id.* at 1179 (citation omitted). The *Richmond* court cited *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) in support of its "*de minimis* injury" holding. However, in *Hudson*, the Supreme Court expressly held that the Eighth Amendment prohibition against cruel and unusual punishment did not include *de minimis* force, rather than *de minimis* injury. Indeed, the Court rejected the lower's courts conclusion that the excessive force should be dismissed because the injuries caused were "minor." While the alleged injuries in this case are less serious than those in *Hudson*, in the view of the undersigned, the *de minimis* nature of the *injuries* does not render the claim meritless as defendants contend, in light of *Wilkins*.

In this case, the parties have presented conflicting evidence regarding the events at issue. Defendants present affidavits attesting that plaintiff threatened to spit on them and that they only used the force necessary to restrain plaintiff. On the other hand, plaintiff presented his own affidavit attesting that he did not make any threats and that defendants kicked him, stood on him, poked him in the eye and

Adam's apple, and forcefully yanked his hands and arms through the food slot in his cell for essentially no reason.

This case is quite similar to a recent decision from the Sixth Circuit. In *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013), Peterson's Eighth Amendment claim arose from an incident in which Officers Johnson and Lindy were attempting to put Peterson in his cell. Johnson's hand became stuck in the cell just as the door began to close. Johnson's frantic shouts alerted Lindy to stop the door from shutting on Johnson's hand. "The sole factual dispute in this case—and the fact on which this case hinges—is why Johnson's hand was in the cell. Peterson says Johnson put his hand in the cell as an excuse to pull Peterson out and assault him; Johnson maintains that Peterson grabbed Johnson's hand and pulled it into the cell." *Id.* at 908. The Court analyzed the issue as follows:

> Ordinarily, [the summary judgment] standard of review would require reversing the judgment below. Peterson sharply disputes Johnson and Lindy's account of who grabbed whom, and this disputed fact is material to the case. Indeed, the hand-grabbing dispute is dispositive because it frames the entirety of the "core judicial inquiry" at issue here, which is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (internal quotation marks omitted). If Johnson was just making up an excuse to pull Peterson out of his cell and attack him, the district court would have erred in finding that Peterson could not establish the subjective sadistic-intent prong. *Curtin*, 631 F.3d at 384 (recognizing that courts frown on

> even *de minimis* uses of force where the purpose of the
> force was "diabolic or inhuman" (quoting *Hudson v.*
> *McMillian*, 503 U.S. 1, 9 (1992))). But if Peterson
> grabbed Johnson's hand, put it in danger of being
> crushed by the closing cell door, and exited his cell as a
> result of Johnson's retrieving his hand, then the ensuing
> two-minute effort to free Johnson's hand and return
> Peterson to his cell was not only permissible, it was
> entirely reasonable. This is true even though Peterson
> alleges that he suffered prolonged nerve pain afterwards,
> as nothing in his allegations about the force used against
> him shows that it was diabolically intended to harm him.

*Id*. at 910-911.  Despite finding that a genuine issue of material fact existed,

contrary to the lower court ruling, the Court went on to affirm the grant of

summary judgment based on the principle of issue preclusion and the factual

findings made in the administrative proceedings over the misconduct tickets.  No

such argument has been made in this case and the undersigned is not inclined to

undertake this extensive and fact intensive analysis without briefing and input from

the parties.  Thus, just as in *Peterson*, there appears to be a genuine issue of

material fact regarding plaintiff's excessive force claim and defendants' motion for

summary judgment should be denied.  Likewise, "[i]f there is sufficient evidence

of improper use of excessive force to defeat summary judgment as to the § 1983

claim, there is necessarily sufficient evidence to support the state law claim of

assault and battery."  *Davis v. Pickell*, 2013 WL 1278520, *17 (E.D. Mich. 2013).

      C.    <u>Retaliation</u>

Plaintiff contends that C/Os Pentrich and Kerkau and Sergeant Shaw assaulted him and that C/O Pentrich and Sergeant Shaw issued him major misconduct violations in retaliation for threatening to file a grievance. Defendants argue that if they demonstrate that their decisions were based on reasons other than plaintiff's exercise of a protected right, plaintiff's retaliation claim fails. In this case, they say that plaintiff was restrained because he became aggressive towards defendants. In addition, plaintiff was issued misconduct violations for assaulting defendants during these incidents, irrespective of any complaints plaintiff filed. Therefore, defendants argue that they are entitled to summary judgment on plaintiff's retaliation claims.

      1.     Legal Standards

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Retaliation based on a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was

"motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id*. at 386, 394. If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id.* at 399.

With regard to the timing of the allegedly adverse actions, mere temporal proximity is insufficient to establish a retaliatory motive. *See Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (while temporal proximity between inmate's grievances and decision to transfer him provided some circumstantial support for a causal connection, this evidence alone was not sufficient to meet inmate's burden showing that the filing of grievances was a substantial or motivating factor for his transfer). Conclusory allegations, however, are insufficient to show that a defendant was motivated by the exercise of a plaintiff's First Amendment rights. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). And, bare allegations by the plaintiff of malice on the part of a defendant are not enough to establish retaliation claims. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). The plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

   2.   Assault

In this case, plaintiff alleges two acts of retaliation based on his statement

that he was going to file a grievance.[2]  The first act of retaliation is the alleged

assault.  C/Os Pentrich and Kerkau and Sergeant Shaw assert that they physically

restrained Tucker in order to counter Tucker's aggressive actions towards them.

According to them, at no time did corrections staff maliciously or sadistically

inflict pain towards Tucker.  The force that was applied, defendants contend, was

only that amount necessary to insure staff safety and bring control to a rapidly

escalating disturbance.  (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 20; Dkt. 30-3, Kerkau

Aff. Ex. B at ¶ 17; Dkt. 30-4, Shaw Aff. Ex. C at ¶ 16).  In addition, C/Os Pentrich

and Kerkau and Sergeant Shaw deny as false, Tucker's allegations that they

assaulted Tucker in retaliation for Tucker filing a complaint or grievance.  C/Os

Pentrich and Kerkau and Sergeant Shaw assert that they did would have taken the

same action with any prisoner, regardless of any grievance, complaint or other

factor.  (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 21; Dkt. 30-3, Kerkau Aff. Ex. B at

¶ 18; Dkt. 30-4, Shaw Aff. Ex. C at ¶ 17).

     Defendants contend that plaintiff cannot establish "but for" causation.

According to defendants, Tucker cannot show that he would not have been

restrained "but for" his complaint.  Conversely, C/Os Pentrich and Kerkau and

Sergeant Shaw have shown that any prisoner would have been restrained and

---

    [2]  Defendants have not disputed, at least for purposes of their motion for summary
judgment, that plaintiff's statement is protected conduct or that he suffered adverse action.

issued misconduct violations based on circumstances other than Tucker's engagement in protected activity. In the view of the undersigned, because there is a question of fact regarding whether the force used was excessive, there remains an issue of fact regarding whether defendants can successfully argue that they would have taken the same action regardless of plaintiff's complaints. Presumably, defendants are not taking the position that they would have used excessive force, regardless of plaintiff's complaint. That is, until there is a determination made regarding whether the force used was excessive, the Court cannot determine whether defendants have satisfactorily met their burden that they would have taken the same action regardless of plaintiff's complaints.

### 3.    Misconduct tickets

Likewise, C/O Pentrich and Sergeant Shaw deny as false Tucker's allegations that they issued him false major misconduct violations in retaliation for Tucker complaining or filing a grievance. (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 16; Dkt. 30-4, Shaw Aff. Ex. C at ¶ 12). C/O Pentrich and Sergeant Shaw assert that they issued Tucker the misconduct violations because Tucker violated the disciplinary rules by assaulting them. C/O Pentrich and Sergeant Shaw maintain that they did not conspire with anyone, nor did they issue the misconduct violations in retaliation for filing a complaint or grievance. C/O Pentrich and Sergeant Shaw would have taken the same action with any prisoner, regardless of

any grievance, complaint or any factor.  (Dkt. 30-2, Pentrich Aff. Ex. A at ¶ 17;

Dkt. 30-4, Shaw Aff. Ex. C at ¶ 13).  Notably, Tucker was found guilty of the

misconduct charges after administrative hearings.  (Dkt. 30-2, Pentrich Aff. Ex. A

at ¶ 18; Dkt. 30-4, Shaw Aff. Ex. C at ¶ 14).

A finding of guilt for the misconduct ticket based on some evidence of a

violation of prison rules essentially "checkmates" a retaliation claim.  *Lewis v.

Turner*, 16 Fed.Appx. 302 (6th Cir. 2001); *see also Bey v. Frechen*, 2006 WL

2632564 (W.D. Mich. 2006); *Coleman v. Gerth*, 2006 WL 2714959 (W.D. Mich.

2006).  As noted by this Court, the Sixth Circuit's application of this rule has been

"unwavering."  *Jones v. Barnett*, 2007 WL 522705 (E.D. Mich. 2007); *Burton v.

Rowley*, 2000 WL 1679463, *2 (6th Cir. 2000) (A finding of guilt based on some

evidence of a violation of prison rules "essentially checkmates [a] retaliation

claim.").  According to the major misconduct hearing report, plaintiff was found

guilty of all charges by the hearing officer.  (Dkt. 30-2, Pg ID 297-298).  Based on

these findings of guilt, plaintiff's retaliation claim as to the allegedly retaliatory

misconduct tickets is "checkmated" and summary judgment should be granted in

defendants' favor on this claim.

    D.   Exhaustion of Administrative Remedies

Defendant Holland moved for summary judgment based solely on the issue

of exhaustion.  In the view of the undersigned, a decision on this issue should be

held in abeyance.  Plaintiff was granted the opportunity to conduct some discovery

on the exhaustion issue.  (Dkt. 44).  Defendant Holland requested and was granted

additional time to respond to the discovery.  (Dkt. 50, 54).  Thus, plaintiff has not

had an opportunity to review the discovery responses and provide a complete

substantive response on the issue of exhaustion.  The undersigned, therefore,

recommends that this issue be held in abeyance until this matter is fully briefed.

The undersigned also notes that the parties have not clearly addressed whether

administrative or judicial exhaustion is at issue or both.  When the parties

supplement the record on this issue, which will be scheduled at a later time should

this report and recommendation be adopted, the undersigned suggests the parties

review *Black v. Michigan Dep't of Corrections*, 2012 WL 994768 (E.D. Mich.

2012), *adopted by* 2012 WL 987781 (E.D. Mich. 2012) (J. Friedman), for a

complete discussion of these two very distinct exhaustion issues.

     E.    <u>Qualified Immunity</u>

     Defendants do not argue that they are entitled to qualified immunity.  Rather,

they argue that because they committed no violations of Tucker's constitutional

rights, qualified immunity is not an issue.  That is, because the evidence on this

record does not support that Tucker suffered a deprivation of a constitutional right,

"there is no claim under § 1983, and Defendants have no need for a qualified

immunity defense." *Ahlers v. Schebil*, 188 F.2d 365, 374 (6th Cir. 1999); *see also*

*Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998) ("If an officer committed no wrong, then qualified immunity is not implicated."). Defendants summarily argue that "C/Os Pentrich and Kerkau and Sergeant Shaw submit that the issue of qualified immunity does not come into play because Tucker did not suffer a constitutional deprivation, or that [they are] entitled to qualified immunity because [their] actions were objectively reasonable under the circumstances. *Dickerson v. McClellan*, 101 F.3d 1151, 1157-1158 (6th Cir. 1996)." (Dkt. 30, Pg ID 267). Defendants' argument is wholly insufficient and perfunctory at best. Thus, the undersigned declines to address the issue of qualified immunity. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (It is not sufficient for a party to mention a possible argument "in a most skeletal way, leaving the court to ... put flesh on its bones."); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (A court need not make a party's case by scouring the various submissions to piece together appropriate arguments.); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (The court is not obligated to make defendants' case for them or to "wade through and search the entire record" for some specific facts that might support their motion.); *Murphy v. Lockhart*, 826 F.Supp.2d 1016, 1037 (E.D. Mich. 2011) ("Because the qualified immunity arguments were presented to the magistrate judge in name only, the Court must agree with his determination that it has not been established in this record.").

Report and Recommendation
Cross-Motions for Summary Judgment
*Tucker v. Pentrich*; Case No 09-13246

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned concludes that certain issues of material fact remain and thus **RECOMMENDS** defendant's motion for summary judgment should **GRANTED** in part and **DENIED** in part.  Because those issues of fact remain, as set forth above, plaintiff's motion for summary judgment should be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

Report and Recommendation
Cross-Motions for Summary Judgment
*Tucker v. Pentrich*; Case No 09-13246

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 19, 2013            s/Michael Hluchaniuk
                                 Michael Hluchaniuk
                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 19, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Allan J. Soros, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): L. Tucker, ID# 132271, BELLAMY CREEK CORRECTIONAL FACILITY, 1727 West Bluewater Highway, Ionia, MI 48846.

                                 s/Tammy Hallwood
                                 Case Manager
                                 (810) 341-7887
                                 tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Tucker v. Pentrich*; Case No 09-13246