UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L. TUCKER,                                             Case No. 09-13246

        Plaintiff,                             Nancy G. Edmunds
v.                                                     United States District Judge

T. PENTRICH, *et al.*,                                 Michael Hluchaniuk
                                                       United States Magistrate Judge

        Defendants.
_____/

**REPORT AND RECOMMENDATION**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 66)**
**AND DEFENDANTS' FOR SUMMARY JUDGMENT (Dkt. 70)**

**I.    PROCEDURAL HISTORY**

Plaintiff filed his prisoner civil rights complaint on August 18, 2009.  (Dkt.

1).  Plaintiff's complaint was initially dismissed under the "three strikes" rule.

(Dkt. 6).  After a trip to the Sixth Circuit Court of Appeals, the dismissal was

reversed and this matter was reopened in June, 2012.  (Dkt. 11, 12).  On August

31, 2012, this matter was referred to the undersigned for all pretrial proceedings.

(Dkt. 20).

Defendants previously filed a motion for summary judgment on December

21, 2012.  (Dkt. 30).  The undersigned concluded that a genuine issue of material

fact existed regarding the excessive force claim and declined to analyze the

collateral estoppel theory set forth in *Peterson v. Johnson*, 714 F.3d 905 (6th Cir.

2013), which was issued after the motion for summary judgment was filed and which was not analyzed in the parties' briefs.  (Dkt. 55).  Because there was a question of fact on the excessive force claim, the undersigned also determined that no determination could be made on defendants' argument, as to plaintiff's retaliation claim, that they would have taken the actions regardless of plaintiff's complaint.  *Id*.  The undersigned also determined that plaintiff's claims that he was issued misconduct tickets in retaliation were "checkmated" by his findings of guilt and thus, should be dismissed.  Defendant Holland's motion for summary judgment based solely on exhaustion was held in abeyance pending plaintiff's ability to review discovery responses and provide a complete substantive response on the issue of exhaustion.  *Id*.  This report and recommendation was adopted by the District Court.  (Dkt. 57).

Plaintiff filed his own motion for summary judgment on March 28, 2014.  (Dkt. 66).  Defendants filed a response on April 21, 2014.  (Dkt. 68).  Plaintiff filed a reply on May 6, 2014.  (Dkt. 69).  Defendants filed a second motion for summary judgment on May 12, 2014.  (Dkt. 70).  Plaintiff filed a response July 24, 2014.  (Dkt. 73).  Defendants filed their reply on August 11, 2014.  (Dkt. 74).

These matters are now ready for report and recommendation.  For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED** and that defendants' motion for summary

judgment be **DENIED** in part and **GRANTED** in part.

## II.    FACTUAL BACKGROUND

A.    Plaintiff's Complaint[1]

Plaintiff's complaint is brought pursuant to 42 U.S.C. § 1983 and he claims infringement of his civil rights, alleging violations of the First and Eighth Amendments of the United States Constitution.  During the time period relevant in the complaint, plaintiff was incarcerated at the St. Louis Correctional Facility (SLF), Ionia, Michigan.  Plaintiff alleges that on June 17, 2009, Corrections Officers (C/Os) Todd Pentrich and Kirk Kerkau made disparaging comments while escorting him from a dental appointment.  Once inside the housing unit, plaintiff alleges that these officers kicked his feet out from underneath him and took him to the floor.  Plaintiff claims that while on the floor, Officer Pentrich intentionally placed his thumb in plaintiff's left eye and then started to choke him by applying pressure to his neck and jaw and pressing his finger on plaintiff's Adam's apple.  (Dkt. 1, ¶ 18).  Plaintiff next alleges that after he was returned to his cell, Sergeant Shaw and Officers Pentrich and Kerkau pulled on his belly chains "with great force in an attempt to cause plaintiff Tucker injury and pain." (Dkt. 1, ¶ 28).  Plaintiff also alleges that the misconduct violations issued by

---

[1]  Extensive additional factual detail can be found in the Report and Recommendation dated August 19, 2013.  (Dkt. 55, Pg ID 882-886).

Report and Recommendation
Cross-Motions for Summary Judgment
*Tucker v. Pentrich*; Case No 09-13246

Sergeant Shaw and Officer Pentrich were false and retaliatory in nature.  Finally, Tucker alleges that Hearings Investigator Brenda Holland failed to conduct an adequate investigation so that he could defend the misconduct charges levied against him.

In Count I of the Complaint, plaintiff alleges excessive force and assault and battery by defendants Pentrich and Kerkau.  (Dkt. 1, Pg ID 3).  In Count II of the Complaint, plaintiff alleges First amendment retaliation.  Specifically, plaintiff claims that because of his role as a prisoner rights activist and jailhouse lawyer, defendants Pentrich and Kerkau retaliated against him based on the use of excessive force described in Count I.  Plaintiff also alleges that they retaliated by issuing the false misconduct report, issuing the false critical incident reports, and by causing him permanent injury.  He claims that the issuing of the reports was pretextual, in order to cover up their retaliatory motive.  In Count III, plaintiff alleges that defendant Shaw kicked him and stood on his leg while he was on the floor, during the same incident with defendants Pentrich and Kerkau.  In Count IV, plaintiff alleges retaliation by defendant Shaw after plaintiff told him he would file a grievance regarding the excessive force/assault and battery claims.  Specifically, plaintiff claims that Shaw issued a false misconduct report, and participated in the second assault and battery when he was returned to his cell.  In Count V, plaintiff alleges retaliation by defendant Holland.  According to plaintiff, Holland told him

that she would not find witnesses for his misconduct hearing and as far as she was concerned, he was guilty. He also says that she failed to produce the video at the misconduct hearing based on plaintiff's having previously filed a grievance against her.

      B.    <u>Arguments</u>

           1.    Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on the issue of exhaustion of his claim against defendant Holland. According to plaintiff, defendant Holland adopted a retaliatory unwritten policy of engaging in retaliation because plaintiff had a pending grievance against him. Holland was the hearing investigator for plaintiff's misconduct tickets and, according to plaintiff, refused to locate or interview witnesses because of the grievance filed against her. Plaintiff contends that he filed a request for re-hearing of his misconduct tickets and that decisions made by hearing officers are non-grievable. (Dkt. 66, Exs. 6, 8). While a prisoner may appeal the result of the request for re-hearing, plaintiff says that this is not a required administrative remedy. Thus, he exhausted his state administrative remedies.

In response, Holland asserts that exhaustion is an administrative remedy and to the extent plaintiff exhausted his claims, it is not dispositive of his claim. Rather, exhaustion is an affirmative defense that, if satisfied, allows a plaintiff to

proceed to the merits of his claims.  Holland also asserts that plaintiff fails to

establish the lack of material fact regarding the merits of his retaliation claims.

2.        Defendants' Motion for Summary Judgment

According to defendants, plaintiff's excessive force allegations depend on

two assertions.  The first is that, unprovoked, officers kicked his feet out from

underneath him and Officer Pentrich poked his left eye and started to choke him.

The second is that, after he was returned to his cell, Shaw, Pentrich and Kerkau

pulled on plaintiff's belly chains with great force in an attempt to cause pain and

injury.  Contrary to plaintiff's allegations, defendants assert that the hearing

officer found, in hearings on the two misconducts, that it was plaintiff who

initiated the encounters which led to the use of force.  In the misconduct hearing

on Pentrich's misconduct report during the cell escort, the hearing officer found:

> I find that prisoner Tucker turned and pulled away from
> officers Kerkau and Pentrich as he was being escorted
> back to his cell. I find that he physically resisted staff by
> pulling away during the escort. I find that he stated,
> "Take me out of these restraints and I will whip your
> ass!" I find that he opined as to how he should spit in the
> face of Officer Pentrich. I find that he was ordered not to
> turn around while being escorted. I find the order was
> repeated several times. I find that he attempted to turn
> around in an apparent effort to position himself so that
> he could spit on Officer Pentrich. I find that prisoner's
> words and actions express intent to injure or physically
> abuse another person.

(Dkt. 68-3, Ex. B, Page ID 1099).  In the misconduct hearing report on Shaw's

Report and Recommendation
Cross-Motions for Summary Judgment
*Tucker v. Pentrich*; Case No 09-13246

misconduct report after plaintiff returned to his cell, the hearing officer found:

> I find that prisoner Tucker physically resisted staff efforts to remove his restraints by pulling his arm away from Sergeant Shaw. I find that he physically interfered with an employee. Tucker was given a valid, reasonable order to place his arm back inside of the prison cell once the restraints had been removed. I find that prisoner heard and understood the order, replied, "Fuck you…" and voluntarily failed to comply with the order by not removing his arm from the door slot.

(Dkt. 68-4, Ex. C, Page ID 1102).

Defendants contend that these factual findings have preclusive effect in this case. That is, plaintiff was found to have committed the misconduct he was charged with, and he cannot argue that he was wrongfully convicted of them without successfully challenging the charges in state court. Defendants contend that this case is similar to the facts in *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013), in which the "core judicial inquiry" of the excessive force claim depended on the plaintiff's allegations that the officers initiated force. However, in both *Peterson* and this case, the hearing officers found that the prisoner engaged first, requiring the use of force to get compliance with the officers' orders. The *Peterson* Court noted, "if Peterson grabbed Johnson's hand . . . then the ensuing . . . effort to free Johnson's hand . . . was not only permissible, it was entirely reasonable." *Peterson*, 714 F.3d at 911. "This is true even though *Peterson* alleges that he suffered prolonged nerve pain afterwards, as nothing in his

allegations about the use of force used against him shows that it was diabolically intended to harm him." *Id*.

As to defendant Holland, defendants incorporate by reference their response to plaintiff's motion for summary judgment. (Dkt. 68, Pg ID 1070-91; Pg ID 1093-1131). According to defendants, not only is summary judgment improper for plaintiff, but summary judgment is proper for Holland. Plaintiff alleges that Holland, as facility investigator, refused to conduct proper investigations of three of his misconduct tickets, including the two misconducts issued by Pentrich and Shaw that are at issue in this case. As noted in defendants' response to plaintiff's motion for summary judgment, the hearing officer responded to plaintiff's allegations that Holland had not requested statements from all of the witnesses he wanted during the investigation and found them immaterial, irrelevant or unduly repetitious. (Dkt. 68, Pg ID 1081-83; Pg ID 1089-91). In addition, plaintiff was found guilty of the misconduct tickets at issue, and the checkmate rule applies. *See id*., at Pg ID 1084. Finally, the hearing officer's findings of fact are conclusive here in terms of plaintiff's challenge that Holland did not conduct an adequate investigation. *See id*., at Pg ID 1085-89. The hearing officer could have ordered more witness statements but found them unnecessary and unduly repetitious in making his findings.

According to defendants, plaintiff has failed to establish that defendants

violated his constitutional rights and thus, they are entitled to qualified immunity.

Rather, they maintain that plaintiff precipitated an assault on defendants which

required the use of force to obtain compliance with their valid orders. In addition,

plaintiff was found guilty of the misconduct tickets, and the hearing officer found

that plaintiff's actions resulted in the efforts by defendants to control him to gain

compliance with their orders. Finally, as to the allegations that Holland did not

conduct a proper investigation, the hearing officer found that plaintiff's questions

of witnesses were immaterial and unduly repetitious. Therefore, defendants

maintain that they are entitled to qualified immunity.

In response, plaintiff asserts that *Peterson* should not be applied

retroactively. If it is to be applied, plaintiff says that *Peterson* did not raise a new

rule of constitutional law. Rather, the Court reached its decision by applying the

well-established principles that were initially set forth in *University of Tennessee*

*v. Elliott*, 478 U.S. 788, 799 (1986). According to plaintiff, in *Peterson*, the Sixth

Circuit merely confirmed the application of issue preclusion defined in *Elliot*.

According to plaintiff, the *Peterson* court repeatedly noted that it was applying an

established rule to the underlying facts. Citing *Brown v. VHS of Michigan, Inc.*,

2013 WL 5583818 (6th Cir. 2013), plaintiff also argues that defendants have

abandoned this claim because they did not raise it in response to a motion for

summary judgment. Plaintiff cites the previously issued report and

recommendation in support of this argument.  Presumably, plaintiff is trying to argue that defendants waived this argument because they did not raise it in their previously filed motion for summary judgment, which according to plaintiff, they were required to do even though *Peterson* was decided after the previous motion for summary judgment was filed, the rule of law it espoused was already established.

Plaintiff also argues that the factual circumstances presented here are very different from those in *Peterson*.  According to plaintiff, no such preclusive effect can be given to a hearing finding of fact where the constitutional claims of the plaintiff are that the misconduct reports were false.  Plaintiff also asserts that the four enumerated criteria in *University of Tennessee v. Eliot* have not been met. Plaintiff says that no factual disputes were resolved at the "sham" misconduct hearing.  He points out that no video was submitted, the record of the hearing does not support the findings of fact, the hearing officer refused to make a record of the hearing, that the hearing officer "adjudicated" plaintiff's federal constitutional rights, and the questions plaintiff wanted to pose to the witnesses were not asked. Plaintiff also asserts that the hearing officer improperly relied on hearsay evidence.

Plaintiff argues that he has established a genuine issue of material fact that defendant Holland adopted a retaliatory unwritten policy of intentionally failing to

conduct pre-hearing investigations of misconduct reports.  Plaintiff had a pending grievance against Holland and she retaliated against him by failing to investigate the misconduct tickets.  Plaintiff asserts that Holland has a legal duty under the MDOC Hearings Handbook and policy directives, which she intentionally failed to carry out.  Because of Holland's failures, plaintiff says he did not have a full, fair, and adequate opportunity to put on his defense.

As to defendants' qualified immunity argument, plaintiff asserts that the Court already determined that defendants were not entitled to qualified immunity. Plaintiff also says that its manifestly unfair to allow defendants a second chance at summary judgment.

In reply, as to plaintiff's retroactivity argument, defendants point out that the retroactivity case on which plaintiff relies – *Solem v. Stumes*, 465 U.S. 638, 643 (1984) – deals exclusively with the determination of retroactive application in the context of criminal cases, not civil.  Thus, defendants maintain that plaintiff's argument that the Sixth Circuit's holding in *Peterson v. Johnson* should not be retroactively applied is without merit, since it deals with the effect of state hearings on collateral 42 U.S.C. § 1983 civil actions.

Defendants dispute plaintiff's contention that this Court has "already rule[d] that Plaintiff Tucker has 'establish[ed]' a genuine issue of material fact on the above sub-paragraph 1-3."  (Dkt. 73, Pg ID 1314, citing Dkt. 55, at Pg ID 880-94)

Report and Recommendation
Cross-Motions for Summary Judgment
*Tucker v. Pentrich*; Case No 09-13246

(referring to the claims of excessive force, assault and battery, and retaliation by Defendants Shaw, Pentrich, and Kerkau in "sub-paragraph 1-3," Pg ID 1314). According to defendants, the Report and Recommendation specifically called out the Sixth Circuit's holding in *Peterson v. Johnson*, 714 F.3d 905 (2013). (Dkt. 55, Pg ID 889-90). In discussing *Peterson*, the report and recommendation noted that "the undersigned [magistrate judge] is not inclined to undertake this extensive and fact intensive analysis without briefing and input from the parties." *Id*. at Pg ID 890. Defendants say they have now briefed this issue in their motion for summary judgment (Dkt. 70), and the issue is dispositive in this case.

Plaintiff further contends that the "only real issue before the Court today is whether or not defendant Holland has adopted a retaliatory unwritten policy of intentionally failing to conduct a prehearing investigation of pending misconduct charges." (Dkt. 73, Pg ID 1315). As to defendant Holland, plaintiff focuses on one issue that plaintiff believes creates a question of fact for a jury when he states, "the jury could reasonably find that defendant Holland violated Plaintiff Tucker's constitutional rights . . . [when] Holland adopted retaliatory unwritten policy of intentionally failing to conduct pre-hearings . . . into the June 17, 2009, misconduct reports." (Dkt. 73, Pg ID 1318). However, according to defendants, this Court has held that, "prison hearings investigators or officers in Michigan are entitled to absolute immunity from liability in a 42 U.S.C. § 1983 suit challenging

their actions in conducting an administrative hearing." *Evans v. Eaton*, 2009 U.S. Dist. LEXIS 47069, *5 (E.D. Mich. June 4, 2009). Moreover, defendants contend that the hearing officer addressed plaintiff's claims that Holland conducted an improper investigation in the hearing report, and found plaintiff's requested additional witnesses immaterial, irrelevant or unduly repetitious. (Dkt. 68, Pg ID 1081-83; 1089-91). Thus, defendants contend that Holland is entitled to summary judgment.

Defendants also maintain that they are entitled to qualified immunity because plaintiff fails to demonstrate that defendants violated his constitutional rights. *Peterson v. Johnson* requires that findings of fact by the hearing officer in a misconduct hearing have preclusive effect in 42 U.S.C. § 1983 actions. Plaintiff precipitated an assault on defendants which required the use of force to obtain compliance with their valid orders. In addition, plaintiff was found guilty of the misconduct tickets, and the hearing officer found that plaintiff's actions resulted in the efforts by defendants to control him to gain compliance with their orders. Finally, as to the allegations that Holland did not conduct a proper investigation, the hearing officer found that plaintiff's questions of witnesses was immaterial and unduly repetitious. For these reasons, defendants contend that they are entitled to qualified immunity.

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing

with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

 B.  Eighth Amendment/Excessive Force/Assault and Battery

 As noted previously in this case (Dkt. 55), the parties have presented conflicting evidence regarding the events at issue. Defendants present affidavits attesting that plaintiff threatened to spit on them and that they only used the force necessary to restrain plaintiff. On the other hand, plaintiff presented his own affidavit attesting that he did not make any threats and that defendants kicked him, stood on him, poked him in the eye and Adam's apple, and forcefully yanked his hands and arms through the food slot in his cell for essentially no reason.

 In the earlier Report and Recommendation, the undersigned pointed out the similarities between the excessive force claim in this case and that presented in *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013). Peterson's Eighth Amendment

claim arose from an incident in which Officers Johnson and Lindy were attempting to put Peterson in his cell.  Johnson's hand became stuck in the cell just as the door began to close.  Johnson's frantic shouts alerted Lindy to stop the door from shutting on Johnson's hand.  "The sole factual dispute in this case—and the fact on which this case hinges—is why Johnson's hand was in the cell.  Peterson says Johnson put his hand in the cell as an excuse to pull Peterson out and assault him; Johnson maintains that Peterson grabbed Johnson's hand and pulled it into the cell." *Id*. at 908.  The Court analyzed the issue as follows:

> Ordinarily, [the summary judgment] standard of review would require reversing the judgment below.  Peterson sharply disputes Johnson and Lindy's account of who grabbed whom, and this disputed fact is material to the case. Indeed, the hand-grabbing dispute is dispositive because it frames the entirety of the "core judicial inquiry" at issue here, which is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (internal quotation marks omitted).  If Johnson was just making up an excuse to pull Peterson out of his cell and attack him, the district court would have erred in finding that Peterson could not establish the subjective sadistic-intent prong. *Curtin*, 631 F.3d at 384 (recognizing that courts frown on even *de minimis* uses of force where the purpose of the force was "diabolic or inhuman" (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992))). But if Peterson grabbed Johnson's hand, put it in danger of being crushed by the closing cell door, and exited his cell as a result of Johnson's retrieving his hand, then the ensuing two-minute effort to free Johnson's hand and return Peterson to his cell was not only permissible, it

> was entirely reasonable. This is true even though
> Peterson alleges that he suffered prolonged nerve pain
> afterwards, as nothing in his allegations about the force
> used against him shows that it was diabolically intended
> to harm him.

*Id*. at 910-11.  Despite finding that a genuine issue of material fact existed,

contrary to the lower court ruling, the Court went on to affirm the grant of

summary judgment based on the principle of issue preclusion and the factual

findings made in the administrative proceedings over the misconduct tickets.

Previously, the undersigned concluded that "[n]o such argument has been made in

this case and the undersigned is not inclined to undertake this extensive and fact

intensive analysis without briefing and input from the parties.  Thus, just as in

*Peterson*, there appears to be a genuine issue of material fact regarding plaintiff's

excessive force claim and defendants' motion for summary judgment should be

denied."  (Dkt. 55).

Now, the parties have teed up the application of *Peterson v. Johnson* so that

the Court must now determine if plaintiff's excessive force claim is barred by

collateral estoppel.  Notably, "the party asserting preclusion bears the burden of

proof."  *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004) (applying

Michigan law); *see also U.S. v. Modanlo*, 493 B.R. 469 (D. Md. 2013) (Under

federal common law, the burden of making a showing on the elements of collateral

estoppel is on the party seeking preclusion.), citing 18 Charles Alan Wright,

Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4421

(2d ed. 2002); *In re Summerville*, 361 B.R. 133, 141 (B.A.P. 9th Cir. 2007)

("Preclusion is an affirmative matter, and the proponent of preclusion has the

burden of proof and bears the risk of non-persuasion."). The Sixth Circuit recently

revisited its holdings in *Peterson* in *Robertson v. Torres*, 770 F.3d 398 (6th Cir.

2014), finding its application to be much more limited than as advocated by

defendants in this case.  The *Robertson* Court first pointed to what the Supreme

Court held in *University of Tennessee v. Elliott*, that "when a state agency acting in

a judicial capacity resolves disputed issues of fact properly before it which the

parties have had an adequate opportunity to litigate, federal courts must give the

agency's factfinding ... the same preclusive effect to which it would be entitled in

the State's courts." 478 U.S. 788, 799 (citations and quotation and alteration

marks omitted).  As observed in *Peterson*, *Elliott* identified "four criteria for, in

the context of a § 1983 case, according preclusive effect to a state administrative

agency's unreviewed factual determination."  *Roberson*, 770 F.3d at 403, quoting

*Peterson*, 714 F.3d at 912.  In *Roberson*, the Court rejected the defendant's

contention that *Peterson* provides a blanket rule that all findings of fact resulting

from a Michigan prison misconduct hearing are conclusive:

> To the extent that Torres argues that, in light of
> *Peterson*, any factual findings by a hearing officer in a
> major-misconduct hearing in a Michigan prison are to be

accorded preclusive effect, we reject such a reading of
*Peterson* as overbroad. *Peterson* is not a blanket blessing
on every factual finding in a major-misconduct hearing.
Although the language of our opinion in *Peterson* is at
times categorical, our decision to accord preclusive
effect to particular findings from Peterson's prison
hearing necessarily turned, at least in part, on the
particular circumstances of Peterson's case. Indeed, the
question of preclusion cannot be resolved categorically,
as it turns on case-specific factual questions such as what
issues were actually litigated and decided, and whether
the party to be precluded had sufficient incentives to
litigate those issues and a full and fair opportunity to do
so—not just in theory, but in practice.  *Id*. at 916–17. It
likewise turns on the court's "sense of justice and
equity," *Blonder–Tongue Labs., v. Univ. of Ill. Found*.,
402 U.S. 313, 334, 91 S.Ct. 1434, 28 L.Ed.2d 788
(1971), which may require a case-by-case analysis of
surrounding circumstances.

770 F.3d at 404-405.

In this case, defendants essentially argue that application of *Peterson*
automatically results in a finding of estoppel as to plaintiff's excessive force
claim.  In *Roberson*, the Court declined to undertake the *Elliott/Peterson* analysis
because the district court had not yet addressed the issue.  Here, the court has
directed defendants to brief this issue and undertake the "extensive and fact-
intensive analysis" required by *Peterson*.  In the view of the undersigned,
defendants have not met their burden under *Peterson*.

The first *Elliott* factor requires that the state agency act in a judicial
capacity.  In *Peterson*, the Court held that Michigan major-misconduct hearings

meet this requirement, since the hearing officer considers evidence from both parties, allows both parties to argue their versions of the facts at a formal hearing, and issues a written final decision that is subject to direct review in state court. *Roberson*, 770 F.3d at 403. The second factor asks whether the hearing officer "resolved a disputed issue of fact that was properly before [him]," and the court found that, in Peterson's case, the second factor was satisfied. *Id*., at 404, quoting *Peterson*, 714 F.3d at 913 (quotation marks and alterations omitted). The third factor asks whether the party to be precluded had an "adequate opportunity to litigate" the factual dispute. *Id*. The *Peterson* court found that this factor was satisfied, given the "plethora of statutory protections" and ultimate right of appeal available to the prisoner. *Id*. The fourth and final factor "provides that if the prior three are satisfied, then we must give the agency's finding of fact the same preclusive effect it would be given in state courts." *Id*. As the *Peterson* court explained,

> The test Michigan courts apply when deciding whether to give preclusive effect to an agency's factual determination proceeds in two stages and tracks several of the Elliott factors. The first stage applies to all cases where preclusion is claimed, and asks whether: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel. The next stage applies only to parties seeking to preclude litigation on a factual issue that was decided by an

> administrative agency. It asks whether: (1) the
> administrative decision was adjudicatory in nature; (2)
> there was a right to appeal from the decision; and (3) the
> legislature intended to make the decision final absent an
> appeal.

*Roberson*, 770 F.3d at 404, quoting *Peterson*, 714 F.3d at 914 (citations omitted).

*Peterson* observed that some of the Michigan factors overlapped with the *Elliott*

factors and were satisfied for the same reasons, such as the decision was

adjudicatory in nature and there was a right to appeal.  The court also found that

there was mutuality of estoppel; that is, the parties to the misconduct hearing were

the same as the parties to the litigation.  Similarly, the court found that a question

of fact essential to the judgment was actually litigated, since the charge was

"submitted to the hearing officer for resolution, and it was resolved." *Id*.  And it

found that, "by statute, this resolution was a valid and final one." *Id*.  Just as in

*Peterson*, these factors are all seemingly satisfied in the present dispute.

   *Peterson* then addressed the final factor, whether the parties had a full and

fair opportunity to litigate the issue.  In *Peterson*, the court concluded that

"Peterson had incentive to vigorously contest" the officer's account, in part

because Peterson risked 30 days' detention, and that he did so, calling witnesses,

submitting affidavits, and moving to disqualify the hearing officer for bias.  *Id*. at

915-16.  As observed in *Roberson*, the court so concluded despite the fact that

Peterson did not have access to counsel and was not allowed to view the videotape

of the incident, where the hearing officer did review the tape, which was withheld for security reasons, and "the hearing officer gave Peterson a detailed description of what the video depicted, down to the time-stamped second of each relevant recorded activity." *Id.* Because the Michigan courts' test was satisfied, the *Peterson* court accorded the hearing officer's factual determination preclusive effect. *Roberson*, 770 F.3d at 404, citing *Peterson*, 714 F.3d at 916.

In contrast, the undersigned does not believe that defendants have established that plaintiff was permitted to "vigorously contest" the charges before the hearing officer. He was denied access to the tape and there is nothing to suggest that he was given any details about what the video revealed. While the hearing officer deemed it "irrelevant," that is not the same as providing plaintiff with the means to vigorously contest the charges. In addition, plaintiff was not permitted to question witnesses and was apparently not permitted to offer additional witness statements. While the hearing officer determined that such evidence was not relevant or was duplicative, defendants ask the Court to accept those conclusions without having any basis to evaluate the propriety of that decision or even understand the bases for it. Indeed, the questions plaintiff wanted to pose are not part of this record nor are the additional witnesses identified. Under these circumstances, the undersigned concludes that *Peterson* does not provide a basis in this case for departing from the Court's earlier decision finding

Report and Recommendation
Cross-Motions for Summary Judgment
*Tucker v. Pentrich*; Case No 09-13246

a genuine issue of material fact regarding plaintiff's excessive force claim as defendants have not met their burden of establishing issue preclusion. And, to the extent plaintiff's retaliation claim involves the claimed assault, a genuine issue of fact remains there as well.[2]

### C.    Retaliation

In *Shelley v. Johnson*, 849 F.2d 228 (6th Cir. 1988) (*per curiam*), the Sixth Circuit expressly held that Michigan hearing officers are independent and exercise adjudicatory functions and accordingly, the court concluded that the Michigan prisoner hearing officer's "role for all practical purposes is similar to that of an administrative law judge and as such he should be entitled to absolute judicial immunity[.]" *Id*. Thus, under *Shelley*, it is clear that an MDOC hearing officer "is entitled to absolute judicial immunity from damages for all judicial acts performed in the course of conducting misconduct hearings." *Laster v. Pramstaller*, 2011 WL 4506956, at *9 (E.D. Mich. 2011), *adopted by* 2011 WL 4505790 (E.D. Mich. 2011), quoting *Branham v. Spurgis*, 720 F.Supp. 605, 607 (W.D. Mich. 1989); *see also Reynolds–Bey v. Harris*, 428 Fed. Appx. 493 (6th Cir. 2011); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007). As observed in *Laster*, this immunity also extends to hearings investigators such as defendant Holland. *Id*., citing *Umbarger*

---

[2] Given these conclusions, plaintiff's arguments regarding retroactivity and abandonment/waiver need not be addressed.

*v. Corrections Med. Serv.*, 93 Fed. Appx. 734, 736 (6th Cir. 2004); *Jones v. Bonevelle*, 2010 WL 5810650, at *4 (W.D. Mich. 2010); *Evans v. Eaton*, 2009 WL 1606492, at *2 (E.D. Mich. 2009).  Plaintiff's allegations against Holland relate to actions taken in the investigation and adjudication of plaintiff's misconduct hearings; thus, Holland is entitled to absolute immunity as a hearings investigator. Accordingly, the Court should grant summary judgment to defendant Holland on this basis as to plaintiff's retaliation claim.

      D.    Exhaustion of Administrative Remedies

Defendant Holland previously moved for summary judgment based solely on the issue of exhaustion.  As explained above, this matter was held in abeyance so that plaintiff could conduct discovery on this issue.  Now, plaintiff has moved for summary judgment on the issue of exhaustion.  However, it is apparent from Holland's response that she has abandoned her defense of exhaustion.  Thus, this matter need not be addressed further.

      E.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity because plaintiff has not established that they violated his constitutional rights.  However, where the evidence on this record does not support that plaintiff suffered a deprivation of a constitutional right, "there is no claim under § 1983, and Defendants have no need for a qualified immunity defense." *Ahlers v. Schebil*, 188

F.3d 365, 374 (6th Cir. 1999); *see also Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir.

1998) ("If an officer committed no wrong, then qualified immunity is not

implicated.").  Defendants summarily argue that "Plaintiff precipitated an assault

on Defendants which required the use of force to obtain compliance with their

valid orders.  In addition, Plaintiff was found guilty of the misconduct tickets, and

the hearing officer found that Plaintiff's actions resulted in the efforts by

Defendants to control him to gain compliance with their orders. Finally, as to the

allegations that Holland did not conduct a proper investigation, the hearing officer

found that the Plaintiff's questions of witnesses was immaterial and unduly

repetitious.  Therefore, all Defendants are entitled to qualified immunity."  (Dkt.

70, Pg ID 1284).  Defendants' argument is wholly insufficient and perfunctory at

best.  Thus, the undersigned declines to address the issue of qualified immunity.

*See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (It is not sufficient

for a party to mention a possible argument "in a most skeletal way, leaving the

court to ... put flesh on its bones."); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641

(7th Cir. 1995) (A court need not make a party's case by scouring the various

submissions to piece together appropriate arguments.); *InterRoyal Corp. v.

Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (The court is not obligated to make

defendants' case for them or to "wade through and search the entire record" for

some specific facts that might support their motion.); *Murphy v. Lockhart*, 826

F.Supp.2d 1016, 1037 (E.D. Mich. 2011) ("Because the qualified immunity

arguments were presented to the magistrate judge in name only, the Court must

agree with his determination that it has not been established in this record.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED** and that defendants' motion

for summary judgment be **DENIED** in part and **GRANTED** in part.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc. If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 13, 2015                         s/Michael Hluchaniuk
                                               Michael Hluchaniuk
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 13, 2015, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Allan J. Soros and Michael R. Dean, and I certify
that I have mailed by United States Postal Service the foregoing pleading to the
following non-ECF participant(s), at the following address(es): L. Tucker, ID#
132271, SAGINAW CORRECTIONAL FACILITY, 9625 PIERCE ROAD,
FREELAND, MI 48623.

                                               s/Tammy Hallwood
                                               Case Manager
                                               (810) 341-7887
                                               tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Tucker v. Pentrich*; Case No 09-13246